We are going to hear next from counsel in the matter of U.S. v. Rory Williams. Thank you. Case number is 23-6501. We're going to hear first from Mr. Culp, who has reserved two minutes for rebuttal. May it please the Court, Robert Culp assigned counsel for Rory Williams, who's serving a 10-year sentence for distribution of what is commonly called molly. Mr. Williams pleaded guilty pursuant to a plea agreement that he later discovered had several adverse terms in it that he hadn't understood, sought to contact his counsel, received no communication from him, and wrote to the Court asking to be appointed counsel, which he had previously been qualified for, even though he had gone on to retain counsel. He's not seeking to withdraw his plea? No. Not at this time. What I'm asking this Court to do is to remand it to the district court on the basis of the completely inadequate inquiry that was done below, particularly combined with this weird proceeding where everyone but Mr. Williams was present to discuss an untranscribed conference. Even if we agree with you on that, there seems to be no question that Mr. Polano then proceeded to very aggressively represent Mr. Williams through sentencing and, in fact, secured a sentence well below guidelines. So how could any error be anything but harmless, sir? I don't think that's the standard, Your Honor. I think under Doe and the Supreme Court's decision in Martel, the issue is whether the inquiry was adequate, not whether, looking back on it, that was an okay sentence or not. And I think there's some very troubling things here in addition to how this issue was handled, the assignment of a managerial role that was not disclosed in the plea agreement, the really almost clever way in which a small transaction from almost a year prior to the one related to the plea was used to give him the two extra points based on the having committed the crime while on probation, calling that relevant conduct, something that he wouldn't even … December 2020 distribution?  That was in the plea agreement. That was the first paragraph of the offense conduct. The transaction, the small transaction is in the plea agreement. I don't think Mr. Williams had the slightest idea that he was going to get two additional criminal history points as a consequence of that, which would bump him from Category 3 to Category 4. So you've got a situation where at the plea, the government represented that his pre-acceptance of responsibility range. And I understand it's an estimate. They didn't say that its binding was 135 to 168, but when it all came out in the wash of sentencing, it was 210 to 262, almost a six-year difference there. Granted, the judge did issue an under guidelines sentence, but he was starting from a higher point than Mr. Williams reasonably understood to be the starting point to begin with. So can we back up to the question of the motion to withdraw for a minute? You frame this as a problem of the depth or the adequacy of the inquiry. Yes. In other words, can we say, hey, Mr. Williams, what's the problem? Talk to me about what the problem is. We've had those conversations, any of us in trial court, many times. What was inadequate here about that inquiry, if that's the focus? There was none. He didn't ask him a single question about his complaints about the letter. What do you mean by this? What do you mean by that? To make it worse, he had a chambers conference where the most important person wasn't there, Mr. Williams, and he had the prosecutor and the defense attorney. So the conference that he had with him when he said, look, you have some choices here, did he need to ask him what the nature of the problem was, having received his letter and having offered him the option of parting ways with his counsel? His request was for a signed counsel. Okay. After this chambers conference, untranscribed, undocumented chambers conference, the judge came out and said to Mr. Williams, you have three choices. I noticed that, too. That seems to me a different problem. So it seems to me a different argument that there is an inadequacy of the inquiry into the nature of the potential conflict versus a failure to advise a defendant who might, in fact, qualify for indigent counsel appointment that he had that right. I'm not seeing you making that latter argument, which I think is a different problem and an interesting problem. But I'm not sure that's the same problem as the adequacy of the inquiry into the nature of the alleged conflict. I'm not sure I'm understanding your question. To me, the inadequacy of the inquiry is what it's all about. I mean, this judge never even entertained with Mr. Williams the idea of assigned counsel. He came out and said, you can represent yourself, you can stick with the guy you're with, or you can hire another person. It wasn't even broached. And I don't know how the judge can eliminate that fourth option of assigned counsel, which he financially had previously qualified for, without asking him what are the nature of the problems. It wasn't even discussed. What do you mean when you say you've got a dummy plea agreement? Tell me more about these phone calls that your lawyer is not returning to you. Tell me more about this conversation you had with a federal defender who said something wrong happened in this case. That one is really remarkable to me. The government, in their own brief, concedes that that person who's mentioned in the letter is a federal defender. None of that came out. I don't know how the judge was supposed to make an informed decision on this without conducting that inquiry. I'm sorry. I feel like I'm being obtuse with your question. I don't know how to explain the question better, so let's just power forward and go ahead and make the arguments you feel like you should make. So the issue of relief is interesting. I mean, I'm not here asking you to vacate the plea. I don't have enough information to do that, and I'm certainly not asking you to declare that this was ineffective assistance of counsel. The court would refuse to hear it if I had made that argument because there's not enough information in this record. What I'm asking is to restore Mr. Williams to that point in October of 2022 when he wrote this letter and he deserved proper inquiry into his request. Now, what I would ask you to do is to vacate the judgment. He can't have this lawyer back. I don't know if you've read the motion the lawyer submitted to this court to be relieved, which resulted in my appointment. There's bad blood here. There's a clear conflict now, so he can't go back. I would say rather than assign a new lawyer to relitigate this motion the way it should have been litigated, I would suggest just vacating the judgment, restoring him to that point in the proceedings where he can plow forward to sentencing or he can talk to this new lawyer and say, you know, geez, maybe I should make a motion to vacate the plea. But I'm not doing that now. If you're not making an ineffective assistance argument, which I understand why you would not be, why is all of this not squarely under Paragraph 7, the appellate waiver and the plea agreement? Well, they have not enforced the waiver as to the issue that I'm raising. There is an exception in the plea agreement for an effective assistance of counsel. I'm not arguing it as a — to seek a remedy of ineffective assistance of counsel, but I think that this falls — this falls within the domain of the appeal waiver not applying. It's a good question, Your Honor, and they're not seeking to enforce it as to this issue. I realize they are as to my substantive issues that I'm not arguing today because I see I'm already out of time. But so I'll reserve the rest of my time. Counsel, you have 10 minutes. Good morning. May it please the Court. Thomas Sutcliffe on behalf of the United States. In the letter that the defendant submitted to the district court in October of 2022, the issues he raised with his then-attorney, Peter Pilano, either did not — on their face did not warrant or require any further inquiry from the district court, or at least did not cause them any prejudice, meaning that any resulting harm — any resulting error was harmless. The principal complaint that the defendant raised that opposing counsel addressed here and focuses very heavily on the brief was the defendant's complaint that he had not received a sufficient benefit from the plea agreement, his complaint in the letter that it was a, quote, dummy plea agreement. However, even as presented in the letter, this was a conclusory allegation. There was no specification in his letter as to what it was about the plea agreement that he was dissatisfied with or what more he thought that Attorney Pilano should do or should have done as part of the negotiation process. And that's significant here because I think the Court should recall that there had been a change of plea hearing only approximately three months earlier. During that hearing, the defendant had represented to the Court under oath that he reviewed the plea agreement, that he understood it, and that he was satisfied with his attorney, then-attorney Pilano. And there's no indication in the letter that he submits to the district court — there's no explanation in that letter for why he had such a sudden change of heart. And the Court was allowed to take that into consideration. But ultimately, even if this letter — it did warrant further inquiry, either on this issue or any other. And even if the district court erred by not conducting a further inquiry, the defendant's Let me ask about the letter. What about the statement in the letter from Mr. Williams that Mr. Pilaro, I believe, agreed to take the case for $8,500, and then he said, I'm not going to work more on the case unless you pay me more money? Isn't that a pretty specific allegation that required an inquiry? Your Honor, admittedly, that is — I think that comes — of all the complaints, that probably comes closer to one raising concern. What I would say, Your Honor, is the principal concern that he's raising here is that his attorney is no longer going to represent him. That's partially remediated by the November 2nd hearing where Attorney Pilano does appear on his behalf. And indeed, Attorney Pilano appeared at every hearing thereafter and did, in fact, represent the defendant very aggressively. So even if it did require further inquiry, it was either resolved at the time that the Court held the hearing or at least didn't establish any prejudice looking at the record as a whole. I do want to make clear that these types of claims are subject to harmless error review. This Court has said that for decades. It made it clear in the Sioux case, HSU, from 2012. It said the same in the John Doe No. 1 case from 2001. It said it as far back as 1981 in McKee v. Harris, and even in the 1970s if you look at the United States v. Morrissey decision. The defendant's claim, which he raises in his reply brief, appears to be that the Martell v. Claire decision abrogates that line of authority. That is not the case. Martell is distinguishable for, I think, at least a few reasons. First of all, the procedural context in Martell is very different. That involved appointment of counsel in a habeas case relating to a capital punishment prosecution. But more importantly, the Court of Martell never had the occasion to address the issue of harmless error because it ultimately found that there had not been an abuse of discretion. When the district court failed to conduct an inquiry in response to a motion to substitute. So there's no holding in that case that abrogates this Court's otherwise clear statements that the Court should apply harmless error review. And the defendant here has not established, and there's no evidence of any harm. First of all, at the outset, there's no indication that this defendant ever wanted to proceed to trial, and he doesn't claim that now. In fact, as early as the detention hearing, the defendant made unsolicited remarks to the magistrate indicating how eager he was to plea, and that's before he was even represented by Attorney Pilano. With respect to the plea agreement, none of the deficiencies that he tries to identify on appeal are compelling ones here. First of all, contrary to what the defendant claims, this plea agreement was supported by consideration, and it did confer a substantial benefit on him. Perhaps the best example of this were the stipulations of the plea agreement, and one of which the defendant and the government stipulated that he was responsible for approximately 8,500 grams of controlled substances, which equated to a base offense level of 32. That was a significant stipulation, giving that for the reasons the government articulates more in its brief, and which I'm happy to delve into in more depth, the undisputed facts in the PSR here were sufficient to support a weight allegation that could have been several times that amount. And the government reserved the right to provide that information to the court at sentencing, right? It did. Yes, Your Honor. There's nothing in there. Well, the government... The plea agreement has a factual stipulation, but has that standard language, right, that says the government reserves the right to provide any and all information about the offense, the offense's conduct to the court and the probation office, right? Your Honor, I think under that stipulation, the government was bound for not to not argue for an offense level above that, which, in fact, it did not. Okay. So I think it could provide information, and I think that information was already in the PSR anyway. Well, not at the time of the plea, right? Excuse me, but it was also in the plea colloquy as well. I mean, he admitted to a forfeiture amount, and he admitted to having assets that by themselves could have supported a weight allegation far above 8,500. But just like the criminal history change that intervened between the plea agreement and the sentencing, by giving that information, you know, we make lots of guarantees to defendants in plea agreements that say, look, we make lots of, I guess, warnings to defendants in plea agreements that this is the party's estimate at this time, and this is what the parties are going to recommend, but the judge isn't bound by this. So is there any reason the judge couldn't have found a higher base offense level based on that, on the quantities that were provided in the PSR and in the other information provided to the court? Well, Your Honor, and again, just to clarify, that information was already in the stipulated facts in the plea agreements, so there was nothing more to provide on that front. Right. So what's the benefit to the defendant of the government saying, we're not going to act, we're telling the judge who's allowed to impose and is expected to impose the correct base offense level under the guidelines, but we're just agreeing we're not going to advocate for that level. How is that a sufficient benefit to the defendant? Well, Your Honor, well, first of all, ultimately the government or, excuse me, the court did apply a base offense level consistent with 32. Right. In terms of the benefit, you know, I think what the government advocates for carries weight in the district court, as it did in this instance. And by stipulating they would not advocate for a greater quantity, I think the government's recommendation carries weight with the district court, as it appears to have done in this instance. So it was a meaningful concession, even though I do agree the district court, if it had wanted to, could have articulated a reason for applying a higher amount. Another thing I want to address, if I may, is the ---- It sounds like you're not enforcing the plea waiver with respect to the sentence. Your Honor, that is correct. Opposing counsel accurately described our position. We are not enforcing it as to the motion for substitute counsel. I think Your Honor is correct. This is not an ineffective assistance of claim. It was our assessment, though, it was ---- Are you enforcing the plea waiver with respect to the sentencing? We are, Your Honor, yes, for the reasons stated. You have a partial waiver. That's correct, yes. Are you able to do that? Waive as to this, but not as to that? I know of no reason why the government is not able, Your Honor. I think it's beneficial that the government does so. It sometimes makes those determinations in the interest of justice. And I think that flexibility is beneficial here. One other issue that the defendant raises in his reply brief with respect to the plea agreement is he now claims that there's an issue with the converted drug weight conversion of 380 to 1 in terms of how synthetic cathinones are converted to converted drug weight. I just want to be clear that he cites several district court cases in his reply brief. Those are not district court cases, as I read them, that dispute the conversion amount. They are instances in which district courts have imposed a downward variance based on policy disagreements with the conversion ratios, as, of course, district courts are permitted to do under Kimbrough. But there was nothing in this plea agreement that ever prohibited the defendant from seeking a downward variance. And, in fact, Attorney Pilato did seek a downward variance. And not only did he do that, he actually cites one of the district court cases that the defendant cites in his reply brief on appeal. That's United States v. McCarthy. And Attorney Pilato cites it in his sentencing submission on page 86 of the appendix. Further, the defendant also makes the point that he claims that the plea agreement failed to warn him of the possibility that there could be a two-level role in the offense enhancement or that his criminal history category could be as high as four. Just to be clear, the plea agreement was not required to warn him of anything. This plea agreement did not purport to provide a comprehensive guidelines calculation. So, for example, with respect to criminal history, it makes no representation at all. And with respect to the offense level, all it does in this instance is provide discrete stipulations regarding specific aspects of the guidelines calculation, like the base offense level. As to those stipulations, the government is bound. But as to any provision not covered by those stipulations, the plea agreement doesn't make one any assurance one way or the other. So as a result, there was certainly no violation of the plea agreement, and there was nothing in this plea agreement that was misleading. Your Honors, unless the Court has any comment. Can I just ask you to go back to the hearing on November 2nd, 2022? Are you asking us to rely on anything that happened in the off-the-record conference in the roving room? No, Your Honor. We are not. From every indication, it appears what happened during that Chambers conference is that the district court had already made its determination and simply was communicating the options it was going to give to the defendant at the subsequent hearing. And that wasn't one option. You could have a new CJA counsel. This person was eligible for that. Your Honor, I agree it was an option. I don't know the district court's reasoning for that, except to say that in this instance, it didn't result in any reversible error. Well, yeah. I mean, it does leave you in a tough position if you're the defendant, because your three choices are keep the person you specifically told me you're not happy with, come up with more money after you've told me your wife had to sell her car to pay this guy's retainer, or represent yourself, which Mr. Williams was savvy enough to know was a bad idea, whereas the fourth option might have been pretty appealing, especially given his express reference to the fact that he had spoken to a defender and that she had offered her services. Now, it was unlikely that the defender was available as an appointment here, because they normally would get the first instance appointment, right? So, but it would have been a different CJA counsel. But isn't that gap concerning? The gap in the sense of not having that fourth option. Yeah, because the first three options are pretty bad. Your Honor, I agree the options the court gave did not address, I think, his concerns in terms of the letter. And I agree the court did not provide the inquiry, or did not conduct an inquiry here, or at least not in the sense I think this case law refers to it. But I think what the district court did here was no worse than if it had summarily denied it, in the sense, at least in the sense that there would not have been any reversible error. So for that reason, there's no basis for reversal. All right. Thank you. Thank you. All right. We'll hear again from Mr. Culp. You have two minutes on rebuttal. It sounds like he's conceding that the court screwed this up, but jumping to no prejudice. I think there is prejudice. Martel does not foreclose harmless error review. You do acknowledge that. What's that? You do acknowledge that Martel does not foreclose harmless error review. Yeah. I'm looking at footnote four in Martel. That's what I'm quoting in my brief. And, by the way, I realize Martel is a capital case. It's in a habeas context. But Martel is invoking what it sees as sort of shared principles and cites this Court's decision in Doe earlier on. But it says that the way to cure that error, meaning the error of no inquiry, would have been to remand to the district court to decide whether substitution was appropriate at the time of Claire's letter. But at the end of the day, the court there determined that the district court acted within its discretion in denying the request to substitute counsel even though there was no appropriate inquiry done because the court was not required to conduct to appoint a new lawyer just so the defendant could present a feudal motion. Looking at all the factors, I'm not saying that every case has to be remanded. But I am saying that the remedy for a failure to inquire in this case where it's not counterbalanced by the other factors is to remand. Judge Jacobs, I owe you an apology. I should have cited United States v. Ojeda in my reply brief. That's a case that you decided that I briefed where there was a partial waiver or a partial declination to enforce the appellate waiver. And the Court had held that the scope of the remand where the government is saying we'll allow the appeal on one issue but not on another is to do that. But the government has waived with respect to the sentencing as well.  Because it is not a major constitutional question. And the Borden case suggests that the government can't do a partial waiver. Right. Right. That's the point. And I wish I had thought of that when I was drafting my reply brief. You'd think I would have. It was my case. And I just want to go back to the prejudice issue just one last time. I know I've already made this point. I think there's prejudice to the process when there is no inquiry and there's proceedings where the defendant is excluded. But even beyond that, I still am very troubled in this case. And I know that they didn't represent that they were giving the entire guidelines inquiry in the plea agreement. But it's very troubling how the government had represented at the plea that it was pre-acceptance 135 to 168, whereas it turned out to be 210 to 262. So this man had reasons to be bothered, is my point. And other than that, I thank the Court. Thank you, counsel. Thank you both. We'll reserve decision.